# EXHIBIT 1

The four restitutionary victims authorize the government to put forward the following plan.

(1) **Writings:** The government will attempt to gather the originals and copies of all of Kaczynski's existing writings, including those currently housed at the University of Michigan. This may require legal action by the government. Any legal action will be undertaken entirely at the government's expense and no costs or fees associated with the action may be assessed against the victims, the auction proceeds, or the victims' restitutionary awards.

(2) The government will not auction or otherwise sell any writings describing the victims' injuries or providing specific, usable information on how to make bombs. The government will make every reasonable effort to obtain permanent custody of such writings. Before conducting any auction, the government shall segregate writings describing victim injuries and shall offer those writings to the victim described or to his surviving family, for free, whether or not that victim is named in the restitution order.

(3) **Belongings:** The government will gather all of Kaczynski's belongings other than those in his prison cell.

(4) The government will not auction or otherwise sell any belongings that are contraband—that is, any belongings which are materials that Kaczynski used or planned to use for making bombs, or any firearms.

(5) The government will auction all saleable writings and belongings, as defined above in paragraphs (1) through (4). This auction will occur in two phases: (a) an auction, to be held as soon as is reasonably practical, of all the saleable writings and belongings described above, except for the writings currently in the custody of the University of Michigan; (b) an auction, to be held as soon as is reasonably practical, of any saleable writings currently in the custody of the University of Michigan which the government manages to obtain by legal action or otherwise.

(6) With due regard to the feelings and sensibilities of the victims and their families, the government will use reasonable efforts to publicize and conduct both auctions so as to maximize monetary return to the victims and their families. The victims and their families will have the right to consult with the government on the means used to publicize and conduct the auctions; but the government will obtain ultimate discretion to determine those means, and the victims cannot take any legal action to challenge the government's exercise of that discretion.

(7) There will be two classes of bidders: victim and nonvictim bidders. Victim bidders-the four listed in the restitution order-may participate in the auction *only* by making joint credit bids.

(8) A joint credit bid is a bid by all four victims to "pay" for an item or items by accepting a stated reduction in the amount of restitution owed to the victims. A joint credit bid must be approved by all four victims; each victim will contribute equally (25%) to that bid; and each victim will own an equal share (25%) of any items acquired by means of that bid. A joint credit bid will be deemed equal to a nonvictim cash bid of the same amount. The government shall warehouse any items acquired by the victims until further instructions from the victims.

Gary Wright has expressed a strong concern that, with respect to any items acquired by joint credit bid, each victim must be permitted to dispose of his or her share of that property as he or she sees fit.

(9) If the victims choose to make one joint bid for all items on sale at the auction, then the bidding thereafter will be restricted to bidders who wish to make one bid on all items on sale at the auction. There will be no item-by-item sales once the victims make a joint bid for all items.

(10) The government shall bear all expenses associated with publicizing and conducting each auction. Immediately following each auction, the government shall distribute to the victims, according to their respective shares of the restitutionary total, any proceeds obtained from nonvictims at that auction. To the extent that the victims have obtained items through their joint bids, the government shall obtain after each auction a court order stating the revised amount of restitution owed to each victim.

(11) The government shall immediately distribute to the victims, according to their respective shares of the restitutionary total, all of the funds obtained from the sale of Kaczynski's cabin.

Connie Murray Dunning and Charles Epstein join in this proposal.

Susan Mosser does **not** join in this proposal, and instead submits a separate statement, included below.

Gary Wright joins in this proposal, but also wishes to submit a supplemental statement, included below.

SEPARATE STATEMENT BY SUSAN MOSSER

Ms. Mosser wants to ensure that the materials are disposed of in as dignified a manner as possible. Accordingly, before the government holds any general auction, Ms. Mosser would prefer that it approach museums and criminal-justice organizations about whether they might wish to acquire the property. Possible museums include the Spy Museum, the FBI Museum, the Montana Law Enforcement Museum, or perhaps even the Smithsonian. Other possible acquirors include institutions that study criminal behavior,

forensic psychiatry, criminal justice, or law enforcement, such as John Jay College, the Forensics College, the FBI academy, the Criminal Justice Department of the University of Massachusetts, or the Department of Psychology of the University of California.

Preferably, acquirors would pay cash for the materials. Alternatively, they could exhibit the materials to the public for a fee, with half of the proceeds going to the victims and half to an FBI fund for wounded or killed agents and their families. The purpose of any such exhibit "would not be to highlight Kaczynski himself as an anarchist/intellectual, but rather as an evil man who disguised himself as an anarchist/terrorist in an attempt to kill people."

Items not disposed of in this way could be auctioned, with due regard to the impact that publicity would have on victims and their families. Sensationalistic forms of on-line auctioning (e.g., "Murderobilia") should be avoided. Victims should be allowed to make "credit bids" at the auction, using the unsatisfied balance of their restitutionary awards to "pay" for items.

Ms. Mosser also has expressed interest in knowing whether the Court regards movie rights or story rights as being part of the property at issue here.

Ms. Mosser has expressed her concern for both her children (who were in the house at the time her husband opened Kaczynski's bomb and was killed), and the other victims' children who were alive at the time their loved one was injured by one of Kaczynski's bombs. She feels that "celebrity status" auctioning and sensational forms of auction would have a sever and negative impact on any recovery they might have made since the time of that trauma.


SUPPLEMENTAL STATEMENT BY GARY WRIGHT

Mr. Wright feels strongly that restitution should, first of all, serve the financial needs of the victim. He therefore objects to any plan that would constrain his ability to maximize the monetary value of his restitutionary award as he sees fit. He does not believe that additional publicity will matter much because the Unabomber case cannot become any more public than it already has. In addition, if the writings and miscellaneous property are displayed at a museum, place of higher education, or any other facility, the public will have open access to all of the documents and property discussed. Accordingly, he wants to use share of the proceeds from any property sale to reimburse himself for medical expenses that were never covered by insurance, and to provide educational opportunities for his child. He fully understands that other victims will have differing viewpoints on this matter, and he respects the different choices that other victims may make. He asks only that his own choices not be constrained.

371034.01