JOHN BALAZS, Bar #157287
Attorney At Law
916 2nd Street, 2nd Floor
Sacramento, California 95814
Telephone: (916) 447-9299
John@Balazslaw.com

Attorney for Defendant
THEODORE JOHN KACZYNSKI

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-S 96-0259-GEB-GGH |
| | ) | |
| Plaintiff, | ) | DEFENDANT THEODORE JOHN |
| | ) | KACZYNSKI'S RESPONSE AND |
| v. | ) | OBJECTIONS TO THE GOVERNMENT'S |
| | ) | AMENDED STATUS REPORT |
| THEODORE JOHN KACZYNSKI, | ) | |
| | ) | |
| Defendant. | ) | Date: June 9, 2006 |
| | ) | Time: 11:00 a.m. |
| _____ | ) | Hon. Garland E. Burrell, Jr. |

**INTRODUCTION**

In an opinion filed July 21, 2005, the Ninth Circuit remanded to the district court for the government to present "a commercially reasonable plan to dispose of the property at issue, the principal purpose of which shall be to maximize monetary return to the victims and their families." United States v. Kaczynski, 416 F.3d 971, 977 (9th Cir. 2005). "If the government fails or refuses to provide such a plan within a reasonable period of time, or if its plan includes a finding of negligible value or results in a nominal, taxpayer-funded contribution to victim restitution, then the district court is directed to return Kaczynski's property to him." Id.

Defendant Theodore John Kaczynski, through counsel, hereby

responds to the government's amended status report filed on April 18, 2006.  The proposals set forth therein fail to present a sufficient plan to satisfy the Ninth Circuit's mandate and improperly include a number of Kaczynski's writings that are far beyond the scope of these proceedings concerning his motion for return of his seized property. For the reasons set forth below, the Court should reject the government's plan for the disposition of Kaczynski's seized property and deny its request to seize and sell other of his writings, such as the copies of his seized writings at the University of Michigan's Special Collections library.

I.    <u>Response To Proposals Concerning Kacyznski's Seized Property</u>

     With respect to the proposals concerning Kaczynski's property that was seized from him at the time of his arrest, the proposals sets forth in the government's amended status report suffer from a number of serious defects.  First and foremost, as set forth in section II, <u>infra</u>, any proposal to auction off Kaczynski's property should not include other writings of Kaczynski that are not currently in the government's possession, such as those possessed by the University of Michigan.

     Second, the proposal of some of the victims to include a preferential credit-bidding system violates the direction of the Ninth Circuit that the "principal purpose of [any plan] shall be to maximize monetary return to the victims and their families."   417 F.3d 977. One of the proposals allows the victims to submit credit-bids, where, if successful, their bid would simply reduce the restitution debt owed by Kaczynski--without paying any money.  This violates the Ninth Circuit mandate because, when the victims purchase property in this

manner, no money is being raised for the victims.  The proposed credit bidding system is akin to the government's argument, which the Ninth Circuit already rejected, that it be allowed to simply assign a nominal value to Kaczynski's property, and then credit that amount to Kaczynski's restitution debt without any money flowing to the victims.[1] 416 F.3d at 974 (describing government's position that it could credit Kaczynski's restitution obligation rather than sell his property as "untenable").  Likewise, the government's idea that the victims be allowed a private credit-bidding sale <u>before</u> a public auction (<u>see</u> Gov't Amended Status Report, at 4, lines 2-13) violates the Ninth Circuit's mandate that the property be sold in a manner that would "maximize monetary return" to the victims and their families because the victims would receive no money for the property.  416 F.3d at 977.[2]

Some of the proposals also provide that certain property not be sold, such as bomb-making materials and Kaczynski's firearm.[3]  Although

---

[1]   In fact, it appears the victims would lose money by credit-bidding as they would still need to pay the 5% commission fee on any successful bid.  <u>See</u> Exhibit 2 to Gov't Amended Status Report (email of Michael Burkhart).

[2]   For similar reasons, the proposal of one of the victims that the government attempt to sell the seized property to some type of museum does not appear workable.  There is no indication that there is any institution willing to pay substantial funds for the property or that charging an admission fee would be a viable option.  Moreover, the government's concurrence with her idea that any such museum portray Kaczynski "not . . . as an . . . anarchist/intellectual but as an evil man" (Gov't Amended Status Report, at 5) must be denied as in violation of the "central tenet of the First Amendment that the government must remain neutral in the marketplace of ideas."  <u>Hustler Magazine v. Falwell</u>, 485 U.S. 46, 56 (1988).

[3]   Kaczynski's counsel is unsure of exactly what the government contends could be kept out of the auction and forfeited rather than returned to Kaczynski.  If government's counsel provides a list of items it contends should not be sold at auction, Kaczynski's counsel is willing to review the list to determine and attempt to reach agreement on what the government is entitled to forfeit as "contraband per se."

Kaczynski does not seek the return of per se contraband, the government has no right to retain "derivative" contraband.  "Contraband per se is property the mere possession of which is unlawful" while "[d]erivative contraband [is property that] may be lawfully possessed but which became forfeitable because of unlawful use."  United States v. Felici, 208 F.3d 667, 670 (8th Cir. 2000), cert. denied, 531 U.S. 1201 (2001). Derivative contraband may be kept and destroyed by the government only if it institutes a timely forfeiture proceeding concerning those specific properties that it contends are forfeitable under applicable forfeiture statutes.  See United States v. Seifuddin, 820 F.2d 1074, 1078-79 (9th Cir. 1987); United States v. Rodriquez-Aquirre, 264 F.3d 1195, 1212 n.13 & 1213 (10th Cir. 2001), and cases cited therein; United States v. Wilson, 540 F.2d 1100, 1104 (D.C. Cir. 1976); United States v. Premises Known As 608 Taylor Avenue, 584 F.2d 1297, 1302 (3d Cir. 1978).  Because the government has not filed any forfeiture action, no "derivative" contraband may be retained or forfeited. Rather, it must be sold or returned to the defendant.  This same rule applies to firearms, which are not per se contraband and which are typically returned to defendants.  Although defendants who have been convicted of felonies are barred from personally possessing firearms, they are not prohibited from ownership.  Seifuddin, 820 F.2d 1078-79; United States v. Casterline, 103 F.3d 76, 78-79 (9th Cir. 1996), cert. denied, 522 U.S. 835 (1997).

Finally, the proposals are deficient in failing to satisfy the Ninth Circuit's mandate that any plan show that it is likely to result in substantial money being distributed to the victims and that, if not, the property be returned to Kaczynski.  416 F.3d at 977 ("if its plan includes a finding of negligible value or results in a nominal,

4

taxpayer-funded contribution to victim restitution, then the district court is directed to return Kaczynski's property to him"). Nowhere has the government attempted to make any showing that any auction of Kaczynski's property is likely to provide more than a nominal payment to the victims. Indeed, the receiver requests an hourly rate of $200 plus 5% commission of the net sale proceeds, which makes it questionable whether any sale would produce a positive return to the victims. Without any information to support a finding that an auction's proceeds would exceed its expenses, the plan is purely speculative and does not satisfy the Ninth Circuit's requirements.[4] The proposed plan also violates the Ninth Circuit's order in that it does not include any provision for the return of property to Kaczynski in the event that any attempted sale does not result in a positive return after expenses are deducted. Pursuant to the Ninth Circuit's opinion, any property that does not meet a minimum bid at auction sufficient to recover expenses and provide real proceeds towards restitution must be returned to Kaczynski.

II.  Response To Proposals Concerning Kaczynski's Writings (Including Copies) At The University of Michigan's Library And Elsewhere.

In addition to the property seized by the government when Kaczynski was arrested, the government's amended status report proposes to attempt to seize and sell the "copy" of Kaczynski's seized writings at the University of Michigan library, as well as all of Kaczynski's post-arrest letters, correspondence, and other post-arrest writings.

---

[4]    Indeed, although the property might bring in more money due to Kaczynski's notoriety, the government has submitted a declaration stating that the items had been appraised as having "no value," "negative value," and "minimal value." 417 F.3d at 973.

This proposal smacks of blatant censorship and should be rejected on any number of grounds.

First, the instant proceedings concern only Kaczynski's motion for return of his seized property.  Any attempt by the government to seize any of Kaczynski's writings other than those seized upon his arrest is beyond the scope of these proceedings.  It is doubtful that the Court has jurisdiction to address any of these matters that are outside Kaczynski's motion for return of his seized property.  The government's proposal is also beyond the scope of the Ninth Circuit's remand order, which directs the government to present a commercially reasonable plan to dispose of only "the property at issue."  416 F.3d at 977.  See Mendez-Gutierrez v. Gonzales, 444 F.3d 1168, 2006 U.S. App. Lexis 9576, at *9 (9th Cir. 2006) ("we have repeatedly held, in both civil and criminal cases, that a district court is limited by this court's remand in situations where the scope of the remand is clear").

Second, the restitution lien covering Kaczynski's property certainly does not apply to copies of his writings, such as those owned by the University of Michigan.  The government's current position is a complete flip-flop from its previous representations denouncing any interest in obtaining copies of Kaczynski's writings in claiming that it was not censoring his ideas.  See Gov't Objections To Magistrate Judge's Findings and Recommendations, filed Jan 30, 2004, at 9-12; id. at 9-10 ("there is simply no basis for finding that the United States is trying to censor or suppress Kaczynski's ideas. . . .  He and/or his attorneys have copies of his writing and the government is not attempting to suppress his ability to express himself.  There is nothing on the record that shows that the United States has requested those documents be returned to it because it has not."); Brief of

Appellee United States, U.S.C.A. No. 04-10158, Jan. 24, 2005, at 12 ("the United States has not tried to assert any control over those copies; and Kaczynski is free to instruct his counsel to send those documents to the University of Michigan (and evidently has done so at least with respect to some documents)"; id. at 24 (in arguing against Kaczynski's First Amendment claim to his original writings, government contended that "[b]oth Kaczynski and the Amici ignore the option of copies of Kaczynski's documents being presented to the library by Kaczynski's lawyers").[5]  This gives credence to the suggestion of the magistrate judge and others that the government's underlying motivation here is in censoring Kaczynksi's words.  Findings and Recommendations, filed Jan. 8, 2004, at 8 ("lurking in the background is the United States' implicit desire to remove Kaczynski's ideas from the public view in whole or in part").  The government should be bound by its prior representations and barred from attempting to seize copies of Kaczynski's documents at the University of Michigan or elsewhere.  See United States v. Garcia, 37 F.3d 1359, 1366 (9th Cir. 1994) (doctrine of judicial estoppel precludes a party from taking inconsistent positions in the same litigation), cert. denied, 514 U.S. 1067 (1995).

Third, the restitution lien does not appear to apply to the copy of Kaczynski's writings at the University of Michigan library or to writings he has given to anyone else.  18 U.S.C. § 3613(d) states that, with exceptions to certain properties or transactions, "the lien shall be valid against any purchaser, holder of a security interest,

---

[5]     Indeed, the Ninth Circuit's decision not to reach the First Amendment issue raised by Kaczynski (417 F.3d at 972 n.1) was likely influenced by the government's position that it was not suppressing Kaczynski's (and others') writings or First Amendment rights because copies of his documents were freely available.

mechanics lienor or judgment lien creditor." Because any party that has received papers from Kaczynski as a gift, including the University of Michigan, does not fall within any of these categories, the lien is not valid as to such parties. This construction follows the plain language of the statute, as well as the principle of statutory construction that, where a statute lists several things, the statute should be construed as limited to those items listed in the statute. See Hale v. Arizona, 993 F.2d 1387, 1393 (9th Cir.), cert. denied, 510 U.S. 946 (1993). Moreover, even if the government's restitution lien does apply to the copy of Kaczynski's papers held by the University of Michigan and those writings held by others, the government could only seize the property by using the "levy" procedures in the Internal Revenue Code, and then disposing of the property as specified therein. See Kaczynski, 416 F.3d at 974 n.5; see 26 U.S.C §§ 6335, 6342.

Fourth, and maybe most significantly, the government's proposal would violate the First Amendment and other substantial rights. Government actions limiting First Amendment rights must be content neutral, must be narrowly tailored to serve a compelling government interest, and must leave open alternative avenues of communication. See, e.g. Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293 (1984); Perry Educ. Ass'n v. Perry Local Educators Ass'n, 460 U.S. 37, 45 (1983). Here, the government's purported seizure of all of Kaczynski's papers (and copies) amounts to a prior restraint on his communication since the natural consequence of the government's plan would be to prevent anyone from receiving any of his writings by seizing them before they reached the recipient. Such a prior restraint on his communication with others would be impossible to justify under the First Amendment. See, e.g., New York Times Co. v. United States,

403 U.S. 713, 714 (1971); <u>Organization for a Better Austin v. Keefe</u>, 402 U.S. 415, 418 (1971).

Even if were not deemed a prior restraint, the government's position to round up all copies as well as originals of everything Kaczynski has written evidences an intent to suppress his ideas, which the First Amendment prohibits at its core.  In addition, the plan to seize Kaczynski's writings--including copies--at the University of Michigan violates not only Kaczynski's First Amendment right to disseminate information and ideas, but also the public's First Amendment right to receive information.  <u>See</u> <u>Richmond Newspapers, Inc. v. Virginia</u>, 448 U.S. 555, 575-76 (1980); <u>Stanley v. Georgia</u>, 394 U.S. 557, 564 (1969).  No such plan could be viewed as narrowly tailored to serve a compelling government interest, and the plan completely fails to leave open any viable avenue of communication for Kaczynski.[6]  <u>See</u> <u>United States v. O'Brien</u>, 391 U.S. 367, 388-89 (1968) (government regulation that furthers important or substantial government interest may still violate the First Amendment by having "the effect of entirely preventing a 'speaker' from reaching a significant audience with whom he could not otherwise lawfully communicate") (Harlan, J., concurring).

Moreover, the government's proposal to keep certain of Kaczynski's writings out of the public's view, such as those referring to specific victims,[7] is inconsistent with the First Amendment.  The fact that

---

[6]    Kaczynski may assert in this litigation the constitutional and privacy rights of the public and others.  <u>See, e.g.</u> <u>Sierra Club v. Morton</u>, 405 U.S. 727, 737-38 (1972) (rights of public); <u>Eisenstadt v. Baird</u>, 405 U.S. 438, 445 n.5 (1972) (First Amendment rights of others); <u>Secretary of State of Maryland v. J.H. Munson Co.</u>, 467 U.S. 947, 956-58 & n.7 (1984); <u>Carey v. Population Services Int'l</u>, 431 U.S. 678, 684 & n.4 (1977) (privacy rights of others).

[7]    This argument applies to the writings that the government has seized at the time of his arrest as well as subsequent writings.

certain communications are offensive to some people can never justify the government in restricting such speech. <u>Street v. New York</u>, 394 U.S. 576, 585 (1969); <u>Texas v. Johnson</u>, 491 U.S. 397, 408-09 (1989). This is true even when the speaker has been convicted of a crime and the persons offended by his communications are his victims. <u>Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.</u>, 502 U.S. 105, 117 (1991) ("The Board disclaims, as it must, any state interest in suppressing descriptions of crime out of solicitude for the sensibilities of readers. . . . The Board thus does not assert any interest in limiting whatever anguish Henry Hill's victims may suffer from reliving their victimization.").

The government's plan to seize other writings of Kaczynski would also violate the privacy rights of certain persons who have corresponded with Kaczynski. "Individuals have a constitutionally protected interest in avoiding disclosure of personal matters . . . ." <u>Hubbs v. Alamao</u>, 360 F. Supp.2d 1073, 1081 (C.D. Cal. 2005) (and cases cited therein). Kaczynski has donated his correspondence with certain persons to the University of Michigan with the condition that the se letters are to remain sealed until the year 2050; in other cases letters may be open to the public, but only in redacted form, with names and other identifying information blacked out. In some cases, the individuals concerned have requested that their letters remain sealed. The government's proposed seizure of the papers from the University of Michigan would violate the privacy rights of these people.[8]

---

[8] Further, many of the papers in the "Kaczynski collection" at the University of Michigan library have never been his property and thus are outside the scope of the restitution lien. Separating papers and copies that were owned by Kaczynski from those that were not would

As set forth above, applying 18 U.S.C. § 3613 in the manner proposed by the government would violate the First Amendment and, if the Court does reach the issue here, the government should be precluded from attempting to seize any of Kaczynski's writings that are at the University of Michigan's library or otherwise are not in its possession.

**CONCLUSION**

For these reasons, the Court should reject the government's proposals in its amended status report and should grant Mr. Kaczynski's motion for the return of property.

Dated: May 26, 2006

Respectfully submitted,

/s/ John Balazs
JOHN BALAZS

Attorney for Defendant
THEODORE JOHN KACZYNSKI

be a difficult process, possibly involving additional litigation.

11