McGREGOR W. SCOTT
United States Attorney
ANA MARIA MARTEL
Assistant United States Attorney
501 - I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900
Attorneys for the United States

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### Sacramento Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR S-96-0259 GEB |
| Plaintiff, | USA REPLY TO DEFENDANT'S OPPOSITION TO STATUS REPORT |
| v. | |
| THEODORE JOHN KACZYNSKI, | DATE:        June 16, 2006<br>TIME:        11:00 a.m. |
| Defendant. | Courtroom: 10, 13th Floor<br>Judge:        Hon. Garland E. Burrell, Jr |

**ALL OF KACZYNSKI'S PROPERTY IS IMPRESSED WITH THE RESTITUTION LIEN**

Kaczynski well knows that, pursuant to 18 U.S.C. § 3613(c), *all* of his property and *rights* to property are impressed with the unpaid restitution lien and are available to be used to satisfy his restitution debt.  While they could not fully agree on the manner of selling their collateral, all the Named Victims requested that:

- the United States gather **all** of Kaczynski's writings, including any copies and originals held by the University of Michigan;

- the United States gather all of Kaczynski's belongings "other than those in his prison cell";

- the United States exclude from any sale or auction "any writings describing the victims' injuries or providing specific, usable information to make bombs";

- the victim-specific writings be offered at no cost to the specific victim or that

1

victim's survivors, regardless of whether that victim is named in the restitution order; and

• the United States refrain from auctioning "any belongings which are materials that Kaczynski used or planned to use for making bombs or any firearms."

Thus, the Named Victims requested that *all* of Kaczynski's property be gathered to be sold. Kaczynski objects to the copies of the writings seized and the writings he has created since his arrest being included in the disposition of the collateral. However, with regard to the writings created from Kaczynski's arrest until his conviction, the restitution order attached to *all his property and rights to property*, including all Kaczynski's writings which were in existence at the time he was convicted. Similarly, the restitution lien attached and attaches to any copies thereof. With regard to writings or copies created since his conviction, because the restitution order also attached to *all his rights to property*, all property obtained or created by Kaczynski since his conviction is also impressed with the restitution lien, until said lien is satisfied in full.

The Ninth Circuit ordered, consistent with the Named Victims' wishes to be expressed in this proceeding, that the United States sell the property for maximum value. The Ninth Circuit's order does not exempt any of Kaczynski's non-bombmaking property from the order of sale, whether said property is writings, copies thereof, or dentures. Maximizing value requires that *all* of Kaczynski's writings, the items of greatest value as his counsel and *amici* counsel argued, be sold. It means that the original writings *and all copies thereof* must be sold if maximum price is to be obtained. Kaczynski now loudly protests that he has First Amendment rights which protect the copies of his seized writing and the originals he has created since incarceration from the Court ordered sale; but scouring the Ninth Circuit's order shows no exemption to the order for sale for copies or for writings created since his arrest.

Kaczynski apparently believes that the United States must levy on the property not in its possession in a separate proceeding. While the United States can separately obtain a court order to, or levy upon, the property in the hands of the University of Michigan or any other person or entity to whom Kaczynski has transferred any of his property, judicial economy dictates that, since the United States is executing on Kaczynski's restitution lien, *all* of Kaczynski's property

2

now in existence be gathered and sold.  This Court has the authority to order the University of

Michigan or any other person or entity to whom Kaczynski has transferred property, or caused

property to be transferred to, to return said property to the United States.  A separate proceeding

is not necessary.

Kaczynski objects to excluding his bombmaking materials from the sale.  Kaczynski has

repeatedly represented to the Magistrate, the District Court and the Court of Appeals that he does

not seek return of bombmaking materials.  However, he keeps trying to backtrack from those

representations.  Kaczynski elected to make bombs from common, ordinary products obtainable

from hardware stores.  Those are his bombmaking materials[1].  When the Ninth Circuit entered its

order, it was with the understanding that Kaczynski relinquished any claim to his bombmaking

materials.  Kaczynski now seems to want to revisit that issue again.

RESTITUTION IS FOR THE VICTIMS' BENEFIT, NOT KACZYNSKI'S

Kaczynski objects to the Named Victims credit bidding,  purchasing items at private sale

or excluding certain items from sale.  He argues that all of the property – other than that which he

wishes to exclude – must be sold at a public auction for cash.  While Kaczynski continues to

show callous disregard for his victims and tries to limit their common law rights, the Ninth

Circuit did not. The Ninth Circuit was cognizant that the restitution lien was for the *benefit* of

Kaczynski's victims and that the Victims' desires with regard to the disposition of Kaczynski's

property were not before it.  It  was cognizant of the damage that some of his writings caused and

could cause to his victims and intended victims.  The Ninth Circuit was cognizant that the

attendant publicity required for maximizing value in a sale of Kaczynski's property might further

victimize the victims.  Thus, to insure that their wishes with regard to the disposition of the

property were carried out, the Ninth Circuit appointed an attorney to represent the Named

---

[1]  Since Kaczynski and his attorney had copies of the list of the items seized, which
Kaczynski appended to his initial motion, he and his attorney had plenty of opportunities to review
the list and determine their position regarding the bombmaking materials before making their
representation to the courts.

3

Victims in this proceeding.  It gave them a voice and standing to determine how their collateral is disposed of.

In conformance with the Ninth Circuit's concern that the victims' desires in this matter be heard, this Court has delayed acting on the United States' request that Mr. Burkart be appointed receiver[2] to give the Named Victims the opportunity to express their wishes with regard to the disposition of the property.  Kaczynski now objects to the Court considering, or following, the Named Victims' desires for disposing of the property, ignoring that the restitution lien is for their benefit.

The purpose of this restitution judgment is to try to make amends to the victims for the death, injury and damage caused by a serial killer.  *Black's Law Dictionary* defines "restitution" as "the act of restoring ... the act of making good or giving equivalent for any loss, damage or injury."  Because courts cannot order that Kaczynski restore to the victims and/or their families their lives or limbs, the Trial Court tried to quantify the damage done by Kaczynski to his victims and their families and ordered that he pay them money.  Assuming that the most money possible would bring the greatest amount of "restoration," the Ninth Circuit ordered that Kaczynski's property be turned into the greatest amount of cash.  But the Ninth Circuit was aware that its assumption about maximizing recovery may be contrary to the Named Victims' real interests.  Thus, it appointed a lawyer to represent them and gave them standing to determine the method and manner of disposition of Kaczynski's property which in *their* judgment best benefits them.

Grasping at straws, for example, Kaczynski objects to the Named Victims making credit bids, alleging that the Ninth Circuit rejected such a procedure.  Kaczynski's position is a blatant misrepresentation of the Ninth Circuit's order [3].  The Ninth Circuit's order does not, in any way,

---

[2]  Contrary to Kaczynski's allegations, the United States has not yet submitted a plan for sale. Its original report stated that 45 days after the appointment of the receiver, it would submit such a plan.

[3]  The United States represented to the Ninth Circuit that it would determine how much it would cost the FBI to conduct a garage sale and would pay said sum to the Clerk of Court.  At oral argument, Judge Canby objected to the United States using taxpayer money to purchase the property.

1   limit the Named Victims' common law rights to purchase the property at a public or private sale

2   by credit bidding[4]. If the Named Victims desire to purchase any or all of the property, they have

3   the same right to credit bid up to the amount of their judgment as any other judgment creditor

4   has. Nothing in the Ninth Circuit's order modified that existing right or any other of the victims'

5   judgment creditors' rights. Some of the victims have indicated that they want to acquire some or

6   all of the property at a private sale. If they prefer a private sale rather than a public auction, they

7   have a right to request that.

8          Similarly, the Named Victims have concluded that the sale of some of the items will

9   cause them more harm than any benefit the proceeds from the sale may bring. For example, they

10  do not want the bombmaking material, bombmaking recipes and firearms sold.[5] The Named

11  Victims also want to exclude the documents referring to victims and potential victims from sale.

12  As beneficiaries of the restitution lien, they have a right to request that this Court exclude said

13  items from the sale, provided Kaczynski is fully credited for the value of the property excluded.

14         Ironically, while Kaczynski strenuously objects to the sale of copies of his seized writings

15  and the materials he has generated since his arrest, he also objects, *inter alia,* to the Named

16  Victims' desire to exclude from sale the writings dealing with victims or intended victims.

17  Kaczynski objects because excluding said property will not maximize recovery. While Kaczynski

18  now claims to be very concerned about protecting the rights of the persons with whom he has

19  _____

20         [4] At common law, judgment creditors have the right to credit bit at foreclosure sales,
21  such as the sale of Kaczynski's property. *See,* for example, 28 U.S.C. § 2410 (c), which codifies
    common law: "[i]n any case where the United States is a bidder at a judicial sale, it may credit
22  the amount determined to be due it against the amount it bids at such sales." To require a
    judgment creditor to pay cash at a foreclosure sale of a judgment debtor's property, as Kaczynski
23  demands,
    only to have the Marshal or auctioneer return the money to the judgment creditor at the
24  conclusion
    of the sale to satisfy part or all of the creditor's judgment is a wasteful and useless exercise.
25  Kaczynski is simply trying to limit his victims' common law rights.
26
27         [5] As discussed above, Kaczynski has relinquished his interest in the bombmaking
    materials
28  and he valued his rifle at $150.

been corresponding since his incarceration, asserting that they have a right to privacy as a reason to exclude those writings from sale; he does not voice the same level of concern– or any level of concern -- for the privacy of his victims and intended victims. On the contrary, throughout this litigation, Kaczynski has strenuously argued about *his* rights of expression without any concern for the damage that publication of his writings may cause to the people he wrote about and their families and survivors. Apparently, Kaczynski believes that only persons who choose to correspond with him have privacy rights but the persons he chose to victimize have no rights to privacy or safety.

But, if the Named Victims wish to exclude those writings which name victims or intended victims or bombmaking recipes from sale, they may do so, provided Kaczynski is given full credit for the value of the property excluded from sale. The beneficiaries to the restitution lien have the right to make the determination that protecting Kaczynski's victims' and their families' privacy is more valuable to them than money. They also have the right to determine that preventing future victims by excluding the bombmaking recipes or his weapons from sale is more valuable to them than money. All that Kaczynski is entitled to is a reduction of his restitution debt by the fair market value of his property excluded from sale[6].

Moreover, if Kaczynski objects to the proposed bid amount(s) or manner of sale, he must prove, by competent evidence, that the amounts or method of sale proposed by the Named Victims significantly reduce the recovery from the sale of the property. If he can do so, he is entitled to have his debt reduced by the higher value proved. But that is the only right Kaczynski has with regard to the disposition of any of his property.

## CONCLUSION

Desperate to retain control of his writings and to continue victimizing his victims, Kaczynski objects to their various proposals to sell his property. He also objects to having *all* of his property included in the sale. Similarly, he objects to the Named Victims' desires to exclude

---

[6] In effect, the Named Victims will be purchasing said items at a private sale by crediting Kaczynski with the value of the writings or rifle excluded from sale. Once they have purchased the property, they can direct the United States to give the writings to the persons written about.

some items from sale.  However, the Court does not have to follow Kaczynski's preferences

regarding the methods of disposition.  The Court only has to consider the Named Victims' desires

with regard to the disposition of the property and insure that Kaczynski gets full credit for the

value of the property.  Provided Kaczynski's restitution debt is reduced by the value of the

property, he has no standing to object to how the property is sold.

Dated:  June 9, 2006                                Respectfully Submitted,

                                                    McGregor W. Scott
                                                    United States Attorney

                                        By:    _____
                                                    ANA MARIA MARTEL
                                                    Assistant U.S. Attorney