IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,       )<br>                                 )<br>            Plaintiff,           )<br>                                 )<br>      v.                         )<br>                                 )<br> THEODORE JOHN KACZYNSKI,        )<br>                                 )<br>            Defendant.           )<br>_____  ) | 2:96-cr-0259-GEB<br><br><u>ORDER</u> |

        This Order concerns the implementation of the plan developed to sell or dispose of property seized during the criminal investigation of bombings for which Defendant Theodore John Kaczynski ("Kaczynski") pleaded guilty and has been sentenced. A status hearing was scheduled in this case concerning when the approved plan will be implemented, which was ultimately held on June 14, 2010.

I. BACKGROUND

        An order approving the plan developed to sell or dispose of Kaczynski's personal property (the "Plan") issued on August 10, 2006. The Plan includes the sale at an online auction of "more than 20 thousand pages of documents written by hand by [Kaczynski], much of it with writing on both sides of the page" (hereinafter referenced as "writings"). (Docket No. 758, 1:22-23.) Kaczynski appealed the district court's order approving the Plan; however, on January 9,

2009, the Ninth Circuit affirmed the district court's order in <u>United States v. Kaczynski</u>, 551 F.3d 1120 (9th Cir. 2009) ("<u>Kaczynski</u>"). Following this Ninth Circuit decision, the district court scheduled a status hearing, and required Plaintiff United States of America (the "government") to file a status report addressing when the Plan would be implemented; any response to the government's status report was required to be filed prior to the status hearing. (Docket No. 755.)

The government filed a status report on May 10, 2010, in which it stated the following:

> A few months ago, the [Federal Bureau of Investigation (the "FBI")] provided six boxes of documents with proposed redactions to the U.S. Attorney's Office for review. That review determined that the redactions initially proposed by [the] FBI, of information that would ordinarily be protected from disclosure by law, exceeded the scope of redactions authorized by this court's orders. Specifically:
>
> (a) Some of the writings include the social security number of a person who was incarcerated at the time of the bombings. In addition, defendant's own social security number appears throughout the materials. FBI would normally redact social security numbers absent a waiver or court order specifically authorizing release.
>
> (b) The writings refer to defendant's family members and friends, including their addresses. In addition to privacy concerns, FBI has concerns about releasing into the general public information about persons closely associated with defendant, in view of public sentiment regarding defendant himself and anticipated media attention in connection with the public auction.
>
> (c) The names of victims and intended victims appear in newspaper articles among the property to be sold.

(Docket No. 758, 2:17-3:2.)

///

///

1          The government further stated in its status report:

2          In order to comply with the court's prior order without incurring a risk of liability, the government requests that the court specifically order the FBI to release defendant's documents after redacting only the three categories of information referred to in the Order of August 10, 2006 (i.e., "the names of all the victims and their families," "all recognized descriptions of the victims and their injuries," and "the names of intended victims").

8 (Id. 3:8-12.)  The government also requested clarification of what

9 constitutes "bomb-making instructions" which are required "to be

10 excluded from the materials to be auctioned." (Id. 3:17-18.)

11          Following consideration of the government's status report,

12 the district court directed the government to file a supplemental

13 status report for the purpose of explaining "whether privacy or other

14 concerns justify redactions other than what has been addressed in

15 prior orders," "since certain of the FBI's proposed redactions have

16 not previously submitted for judicial decision . . . ." (Docket No.

17 760, 2:2-6.)  Therefore, the status hearing was rescheduled and any

18 response to the government's supplemental status report was required

19 to be filed before the rescheduled status hearing. (Id. 2:16-17.)

20          The government filed a supplemental status report on May 20,

21 2010, in which it stated:

22          In the government's view, redactions other than the narrow categories identified in the order of August 10, 2006, approving the amended plan of sale (Docket Item 730) would be inconsistent with that order. Although the order does not explicitly forbid further redactions, it impliedly does so when read in the context of Ninth Circuit decisions in this case.

27 (Docket No. 762, 1:26-2:2.)  However, the government also stated "the

28 redaction of all but the last four digits of social security numbers

may be appropriate" in light of the potential for identity theft and the fact that social security numbers are routinely withheld from disclosure.  (Id. 3:14-20.)

Kaczynski filed a response to the government's supplemental report on June 1, 2010, in which he opposed any redactions to his writings other than those specifically approved in the Plan, stating he agrees with the government "that the [Plan approval order filed on August 10, 2006] impliedly precludes additional redactions other than those specifically authorized by the [Plan approval order]."  (Docket No. 764, 1:25-26.)  Kaczynski also requested that his writings not be redacted until his counsel confirms that he possesses a complete copy of his original writings.  (Id. 3:6-10.)

At the status hearing held on June 14, 2010, Assistant United States Attorney Ana Maria Martel, Esquire, appeared on behalf of the government; Erin Radekin, Esquire, appeared on behalf of Kaczynski; and Steven Hirsh, Esquire, appeared telephonically as pro bono counsel for the Named Victims.[1]

## II. DISCUSSION

The following issues were discussed at the June 14, 2010 status hearing: 1) the propriety of the FBI's additional proposed redactions; 2) the method of redaction; 3) what redactions are authorized in the bomb-making instructions category; 4) Kaczynski's request to obtain a complete copy of his original writings; and 5) whether an in camera review of any proposed redaction is necessary.  These five issues are discussed in turn below.

---

[1]  The Named Victims are those victims and/or their family members who submitted claims for restitution in Kaczynski's criminal case.

### A. The FBI's Additional Proposed Redactions

The government and the Named Victims agreed at the status hearing that all but the last four digits of all social security numbers contained in Kaczynski's writings should be redacted. (Tr. June 14, 2010 Status Conference ("Tr.") 7:1-3, 13:5-22, 43:20-45:3.) Therefore, all but the last four digits of all social security numbers included in Kaczynski's writings shall be redacted.

However, the Named Victims and the government argued that the names and addresses of Kaczynski's friends and family should not be redacted from Kaczynski's writings. The Named Victims and the government explained during the June 14, 2010, status hearing that Kaczynski had unsuccessfully argued this third party privacy issue in his appellate briefing filed in the Ninth Circuit, which challenged the approved Plan, and that this issue was thoroughly briefed. (Tr. 6:4-25, 9:8-15, 11:19-20, 12:21-25, 15:18-23.) The government and the Named Victims contend the Ninth Circuit implicitly rejected Kaczynski's third party privacy arguments, even though this issue is not addressed in the Ninth Circuit's <u>Kaczynski</u> decision. (Tr. 11:6-16, 15:23-16:1.) The Named Victims also made the following arguments concerning this third party privacy issue at the status hearing:

> We take strong exception to the idea that important biographical information, that may go directly to the value of these writings, such as references to . . . Mr. Kaczynski's immediate family . . . would be redacted.
>
> For instance, if Mr. Kaczynski talks about his relationship with his brother David, which is a highly-publicized relationship, and much is known about it, and of course everyone knows that he had a brother named David, under the terms of what I believe I'm hearing the FBI proposed, that would be redacted, not only damaging the document but eliminating, perhaps, an important source of

5

> interest to those who might wish to purchase them.
>
> And, of course, the Ninth Circuit's basic injunction to us here was to maximize commercial value of the sale, consistent with the privacy and feelings and sensitivities of the victims. So, you know, a plan that sort of bowdlerizes the documents, and removes the biographical interest, is not going to help maximize the commercial value of the auction.

(Tr. 7:4-22.)

The Ninth Circuit discussed redactions in Kaczynski as follows:

> The approved Plan permits the government to redact from the originals the names of victims and their families, names of other intended victims, and recognizable descriptions of the victims and their injuries. This proposal was made at the request of the Named Victims, whose interests this court directed the district court to consider.
>
> ....
>
> Moreover, any diminution in the originals' value is justified because of the importance of excising this information to protect the privacy interests of the victims and intended victims. We directed the district court to take [the privacy interests of the victims and intended victims] into account in fashioning a plan for the sale, and the Plan is a reasonable compromise that permits the victims to hopefully recoup some monetary value without further compromising their privacy or memories of their loved ones. The redactions may affect *value*, . . . .

Kaczynski, 551 F.3d at 1128.

Based upon the parties' redaction arguments and the Ninth Circuit's directive to maximize the monetary return to the Named Victims and the families of Named Victims, only the redactions approved in the Plan and this Order are authorized.

///

///

6

### B. The Method of Redaction

The government identified two possible methods of redaction: redaction by excision/cutting or redaction by ink. The Named Victims suggested their preference for redaction by ink by inquiring at the status hearing: "Has someone put the ink down and flipped it over and seen that it made the other side unreadable?", to which the government responded "No." (Tr. 24:21-23.) The Named Victims then proposed "that [the government] take a page that has somebody's name on it, . . . photocopy the back of it, or the reverse side of it, and that they actually try it, and then show us what actually happens . . . ." (Tr. 26:10-13.) The district court gave the government and the Named Victims two weeks to ascertain whether redaction by dark ink was sufficient, and requested that the Named Victims inform the district court of their redaction preference in a filed proposed order.

The Named Victims subsequently filed a proposed order in which they state their preference is to accomplish the authorized redactions by using dark ink rather than excision. (Docket No. 770, 1:23-25.) Accordingly, dark ink shall be used to make the authorized redactions.

### C. Scope of Bomb-Making Instruction Redactions

The government sought clarification of what is within the "bomb-making instruction" category of redactions. The government indicates this clarification is required because it discovered subsequent to briefing in the district court and the Ninth Circuit that what could be characterized as bomb-making instructions are intermingled in the 40,000 pages of Kaczynski's writings. (Tr. 20:19-21:5.)

///

1    The Named Victims responded at the status hearing by
2 proposing the following definition of "bomb-making instructions":
3 "'technically-enabling' bomb-making material, which includes precise
4 descriptions of quantities, design elements, and/or chemicals that are
5 not obvious." (Tr. 21:12-22:9; Docket No. 769, 2:5-7.) The Named
6 Victims also stated "we would want to minimize the redaction of such
7 material."

8    Following discussion of the issue, the district court
9 ordered the government to provide the Named Victims' counsel with an
10 example of redactions that the government opines are within this
11 definition so that it could be determined whether the government and
12 the Named Victims are in agreement on what writings are encompassed in
13 this redaction category. (Docket No. 769, 2:7-22.) If an agreement
14 was reached, the Named Victims were required to "file proposed
15 language that could be included in an order which authorizes the
16 government to make the agreed upon redactions." (Id. 2:21-23.)

17    The Named Victims filed a proposed definition for
18 "technically enabling descriptions of bomb design, construction, and
19 testing" in a proposed order filed on July 28, 2010. (Docket No. 770,
20 2:3-9.) This definition is adopted and stated below.

21  **D.   Kaczynski's Request for a Complete Copy of His Writings**
22    Kaczynski requested during the status hearing that he be
23 provided a complete copy of his original writings before they are
24 redacted. (Tr. 45:7-10.) The district court previously ordered the
25 government to provide Kaczynski "with any page Kaczynski has not
26 already received in a readable form." (Docket No. 730, 14 n.12.)
27 However, after discussion of this issue at the status hearing it was
28 decided that the government shall provide Kaczynski's counsel with an

exact electronic copy of his original writings as they appeared before redaction.

### E.  In Camera Review

The government also sought clarification on whether any proposed redaction must be submitted for in camera review before the redaction is made. (Docket No. 758, 3:23-25.) The Ninth Circuit discussed in camera review in Kaczynski as follows:

> To the extent Kaczynski objects that the government should not be permitted to single-handedly excise the documents without supervision, this can be easily remedied by having the district court review the materials in camera and approve the redactions to ensure they correspond to and do not exceed the descriptions in the approved Plan.

Kaczynski, 551 F.3d at 1127.

A review of the authorized redacted materials in camera is unnecessary since what is to be redacted is clarified in this Order, and the authorized redactions are "made at the request of the Named Victims, whose interests [the Ninth Circuit] directed the district court to consider." Id. at 1128.

### III. CONCLUSION

For the stated reasons, IT IS HEREBY ORDERED that the court's Plan approval order filed on August 10, 2006 is supplemented as follows:

1. Within sixty days after this order is filed, the government shall deliver to an auctioneer designated by the United States Marshall the property to be sold for restitution.

2. Sixty days after conclusion of the auction, the government shall provide Kaczynski's counsel with an electronic copy of his original writings (the

9

"Writings") as they appeared prior to the redactions described below.

3. Names, addresses, and other identifying information concerning actual victims or other persons whom Kaczynski considered targeting, as well as descriptions of the actual victims' injuries, are to be redacted from the Writings using dark ink rather than excision. Because the ink bleeds through to the other side of the page, the other side must be copied prior to redaction; and that copy will be placed next to, and sold with, the original, redacted page in the auctioned materials. In some instances, both sides of a page will require redaction, in which case both sides will be copied prior to redaction and the copies will be handled in the same manner. All but the last four digits of social security numbers in the Writings shall also be redacted. The government shall carry out the redaction of the Writings without submitting proposed redactions to the court for in camera review.

4. Technically enabling descriptions of bomb design, construction, and testing will be redacted in the manner described in Paragraph 3, above. "Technically enabling" means "containing specific details about bomb design, materials, quantities, or chemistry that would help a reader build a bomb." "Technically enabling" does not refer to non-enabling statements such as (to use hypothetical examples), "I tested the new bomb design today and it blew up a tree stump," or "I stayed

up until 3 a.m. working on the new bomb design, which will be more powerful."

5. No redaction shall be done except to the Writings. For example, newspaper and magazine clippings will not be redacted.

The government shall file a status report no later than 90 days after this order is filed, in which it explains the status of its efforts to implement the Plan. Any response to this status report should be filed 100 days after this order is filed.

IT IS SO ORDERED.

Dated: August 4, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge