IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 2:96-cr-0259-GEB |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| THEODORE JOHN KACZYNSKI, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Theodore John Kaczynski ("Kaczynski") filed a motion on August 19, 2010, to modify the August 5, 2010 Order, which supplemented the court-approved plan developed to sell or dispose of the property seized during the criminal investigation of Kaczynski's criminal bombings. Specifically, Kaczynski seeks to modify the August 5, 2010 Order to 1) provide a mechanism to request corrections to the electronic copy of his original writings, which the government is to provide his counsel after the conclusion of the auction, and 2) to provide for "the disposal of papers that were seized from [his] cabin that are not [his] own writings, but the writings of others . . . ." (ECF No. 772, 1:25-2:4.)

Kaczynski argues he is entitled "to an opportunity to request that the government replace any illegible or corrupted documents that may exist in the electronic copy provided by the government in the first

1

instance." Id. at 2:11-13. His motion includes two alternative proposals to ensure his receipt of a complete copy of his writings. Kaczynski first proposes that the government provide his counsel an electronic copy of his original writings "[p]rior to any redactions[,]" and that after receipt of the copy his counsel be given ninety days in which "to examine the electronic copy and apply to the government for correction of any illegible document or corrupted file contained in the initial copy." Id. at 3:12-16. Kaczynski argues "if the Court is not willing to order that the auction be delayed [for 90 days] to ensure that [he] receives a complete, exact copy of his documents," his alternative, second proposal should be adopted. Id. at 3:19-23.

Kaczynski's second proposal provides for "one year from the date in which the electronic copy is originally provided to [Kaczynski's] counsel during which he can, through counsel, make application to the government for a new copy of any illegible or corrupted document or file." Id. at 4:7-10. Kaczynski notes this proposal requires "the government to keep its own copy of the original documents, prior to redaction, so that such applications can be fulfilled." Id. at 3:23-25.

Kaczynski further argues in his motion that a provision should be made for the writings seized, other than those he authored, since "these items have not been dealt with separately in the litigation." Id. at 4:27-5:1, 5:10-16. Kaczynski states:

> The simplest, least costly method for disposing of such documents is to either return them to Mr. Kaczynski or copy such documents along with Mr. Kaczynski's own writings and include them in the electronic copy to be provided to counsel. Such method avoids any additional litigation should the government's implementation of the order lead to the destruction or loss of such documents. Further, these documents are fairly characterized as essential to the communication of ideas in Mr.

2

          Kaczysnki's own writings because many of them are responses to Mr. Kaczynski's writings or related in some other manner to his writings and are thus logically disposed of in the same manner as Mr. Kaczynski's own writings.

Id. 5:2-9.

          The government objected to Kaczynski's motion in a filing on August 26, 2010, in which it argues, *inter alia*, "[the] motion is a transparent attempt to prevent the sale of his property, to keep wasting this Court's time and scant resources, and to continue victimizing the victims[, which] should be summarily denied." (ECF No. 773, 2:7-9.) The government also argues Kaczynski waited "two months after the [status conference]" to request the ability to compare his electronic copies to the originals, and "he has never [previously] alleged that his First Amendment rights are somehow violated if he is not given a copy of anyone else's writings." Id. 2:3-7, 2:13-15.

          An order issued on September 3, 2010 requesting "[c]ounsel for the United States, Theodore John Kaczynski, and the Named Victims . . . to discuss Kaczynski's objection concerning when Kaczynski's counsel shall be provided an electronic copy of Kaczynski's original writings as they appeared prior to redactions." (ECF No. 774, 1:12-16.) The September 3, 2010 Order includes the statement: "the Court desires further input on this objection in a filing or filings due no later than September 13, 2010." Id. 1:21-23.

          The Named Victims filed a response on September 13, 2010. (ECF No. 775.)  In their response, the Named Victims object to Kaczynski's first proposal that he be granted 90 days before the auction to apply for corrections to the electronic copy of his writings, arguing "the long-planned auction would be delayed another 90 days while Kaczynski's [counsel] quality-checks the electronic version of the unredacted

3

writings." Id. 1:21, 1:24-26.  The Named Victims contend the delay is "unfair and unnecessary" because, *inter alia*, it

> represents yet another attempt by Kaczynski to privilege his own asserted rights above the Named Victims' right to compensation. What he seeks is nothing less than perfection. Based on the miniscule risk that a handful of the 40,000 pages at issue here fails to meet his standard of legibility, the victims will suffer—at a minimum—another three months' [sic] delay in receiving money that their families vitally need.
>
>  But Kaczynski is not entitled to perfection-merely to a reasonable accommodation . . . . Indeed, the Ninth Circuit held years ago that the auction plan must seek to maximize monetary returns for the victims if it is to "defeat" Kaczynski's countervailing right to the return of his property . . . . That approach—mandating the design and implementation of an auction plan capable of "defeat[ing]" Kaczynski's rights—certainly does not privilege those rights above the Named [Victims'] rights or give him a veto over the auction whenever some detail of it is not to his liking.

Id. 1:26, 2:5-18.  The Named Victims further argue that any infringement to Kaczynski's First Amendment rights in not receiving an exact copy of his original writings is de minimis and does not give rise to a First Amendment claim. Id. at 2:21-3:11.

The government also filed a response to Kaczynski's objection on September 13, 2010 in which it "concurs with the Named Victims'" responses to Kaczynski's modification motion. (ECF No. 776, 2:13.)

The government and Named Victims do not object to Kaczynski's second proposal in which he requests a one-year period after receipt of his copy within which he can "[apply] to the government for a new copy of any illegible or corrupted document or file, and [have] the government . . . comply with such application provided it is made within that one-year window of time."  However, the Named Victims propose that the government provide Kaczynski with a hard, versus electronic, copy.

4

(ECF No. 775, 3:18-20.) The Named Victims argue providing Kaczynski with an electronic copy undermines the Ninth Circuit's stated purpose in allowing the sale of Kaczynski's redacted writings, i.e. "a reasonable compromise that permits the victims to hopefully recoup some monetary value without further compromising their privacy or memories of their loved ones" since he could "in a manner of minutes, . . . upload to the Internet a complete and unredacted set of his writings, rife with the details of his victims' identities and injuries and his systematic efforts to harm them." Id. 3:22-28. The Named Victims also state they recognize after Kaczynski receives a physical copy of his writings, he can have them scanned into electronic format, but contend "there is no reason to place taxpayer resources at his disposal to accomplish (and accelerate) that task, thereby undermining the purpose of the auction plan and its attendant privacy protections." Id. 4:11-14.

The government states it is "prepared to make photocopies of [Kaczynski's] writings and produce the same to [his] representative . . . [,]" and will "retain the scanned or photocopied documents for any period of time," if ordered to do so. (ECF No. 776, 2:15-18.)

**A.   Kaczynski's Ability to Seek Corrections of Copied Writings and the Form of His Copy**

Kaczynski's first proposal would delay the auction preparation process for 90 days while Kaczynski's representative makes a comparison of documents that his counsel could have made much earlier in this case. Since this proposed delay does not foster the goal of having the auction "within a reasonable period of time," Kaczynski's first proposal is rejected. U.S. v. Kaczynski, 416 F.3d 971, 977 (9th Cir. 2005).
///
///

Kaczynski's second proposal, "that the order . . . provide for a window of time after [Kaczynski's] counsel receives . . . [a] copy [of Kaczynski's writings] during which his designated representative can examine the copy and his attorney of record can make applications to the government for new copies of documents or files that are corrupted or illegible," will be adopted; however, the copy he shall receive will be a physical copy rather than electronic copy. Kaczynski's counsel proposed the then unopposed electronic copy idea at the June 14, 2010 status hearing. However, now both the Named Victims and the government request that this portion of the August 5, 2010 Order be modified. The Named Victims state after reflecting on the matter, their preference is that Kaczynski be provided a hard copy of his unredacted writings, not electronic. The Named Victims' argument that providing Kaczynski an electronic copy could enable Kaczynski to readily undermine the purpose of the Court's redaction plan is persuasive. Therefore, the August 5, 2010 Order (ECF No. 771) is amended as follows:

>Page 9, lines 1-2 are replaced with the following: "exact photocopy of his original writings as they appeared before redaction."

>and

>Page 9, line 26 through Page 10, line 2 are replaced with the following:  "2. Sixty days after conclusion of the auction, the government shall provide Kaczynski's counsel with a photocopy of his original writings (the "Writings") as they appeared prior to the redactions described below."

Further, the August 5, 2010 Order is supplemented on page 11 by adding the following paragraph at the commencement of line 6:

"6. Kaczynski shall have one year from the date on which the copy is provided to his counsel within which he can, through counsel, make application to the government for a new copy of any illegible page; and the government shall comply with such application provided it is made within one-year of the referenced date. At the conclusion of this one-year time period, provided the government has reasonably satisfied all applications made within that time, the government need no longer maintain a copy of the original documents."

**B.   Others' Writings**

Lastly, Kaczynski's arguments concerning the seized writings of others are not persuasive. The Ninth Circuit decision on the district court's order denying Kaczynski's motion to return the property seized during his criminal investigation held, "[i]n the probable event that the value of Kaczynski's property is more than negligible, the property is needed to satisfy the terms of the restitution order, and the government has a cognizable claim of ownership sufficient to defeat Kaczynski's motion for its return." U.S. v. Kaczynski, 416 F.3d at 976 (quotation omitted). Therefore, Kaczynski's request for a return of the writings of others has not been shown to be ripe for decision since it is not now known whether any of those writings will be sold or disposed of in accordance with the orders issued in this case.

Further, Kaczynski's arguments that these writings can be "fairly characterized as essential to the communication of ideas in [his] own writings . . . and are thus logically disposed of in the same manner as [his] own writings," and that additional litigation involving these writings could be avoided if what he proposes is adopted, concern

1  a stale claim not before alleged as an issue in this case. (ECF No. 772,
2  5:4-9.)  The government's objection to this claim essentially raises
3  "[t]he defense of laches [which] stems from the principle that 'equity
4  aids the vigilant, not those who slumber on their rights,' and is
5  designed to promote diligence and prevent enforcement of stale claims."
6  Powell v. Zuckert, 366 F.2d 634, 636 (D.C. Cir. 1966)(citation omitted).

> The equitable doctrine of laches was designed to promote justice by preventing surprise through the revival of claims permitted to slumber for an unreasonable period of time. In other words, the right to be free of stale claims prevails over the right to prosecute them. Long ago Mr. Justice Story, with customary clarity, stated the reason for the rule in these words: "It is for the public interest and policy to make an end to litigation . . . ." Public interest, order and tranquility, therefore, require that interested parties acquaint themselves with existing rights within a reasonable time. What constitutes a reasonable time is not [limitless].

Warner v. First Nat. Bank of Minneapolis, 135 F.Supp. 687, 693 (D.C. Minn. 1955).

Kaczynski's unexplained unreasonable delay of waiting until the eve of the auction preparatory process to raise this claim, combined with his threat to litigate this claim at this late stage of the proceeding, and the Named Victims' concern that further delay deprives them of "receiving money that their families vitally need," evinces that this issue is barred by the equitable doctrine of laches. Kaczynski has not previously raised this issue during the five years that the parties and district court have been developing and implementing the plan to sell or dispose of his property, and he provides no explanation why he did not raise it at an earlier stage of the proceeding. Klamath Siskiyou Wildlands Center v. Boody, 468 F.3d 549, 555 (9th Cir. 2006) (laches requires proof of (1) lack of diligence

1 | by the party against whom the defense is asserted, and (2) prejudice
2 | resulting from the delay).  For the stated reasons, this portion of
3 | Kaczynski's request is denied.
4 |     IT IS SO ORDERED.
5 | Dated:  September 17, 2010

```
                              _____
                              GARLAND E. BURRELL, JR.
                              United States District Judge
```