IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
UNITED STATES OF AMERICA,       )
                                )       2:96-cr-0259-GEB
          Plaintiff,            )
                                )
     v.                         )       ORDER*
                                )
THEODORE JOHN KACZYNSKI,        )
                                )
          Defendant.            )
                                )
```

On November 8, 2010, Defendant Theodore John Kaczynski ("Kaczynski") filed an "Application to Stay the Court's Orders Regarding the Sale of His Writings and Papers Pending Appeal[,]" or in the alternative, "until November 18, 2010, to permit him to seek a stay . . . from the Ninth Circuit . . . ." (Def.'s Appl. to Stay the Court's Orders Pending Appeal ("Mot."), 1:18-22, ECF No. 785.) Kaczynski argues "the equities involved in this case strongly favor a stay[,]" since "if there is no stay . . . , there is the possibility that Kaczynski will lose some of his documents forever . . . ." Id. at 4:5-6, 13-14.

Kaczynski's November 8, 2010 stay motion was filed by Kaczynski's counsel on his behalf, but about a month before this stay motion was filed, Kaczynski filed a "Motion for Substitution of Counsel

---

\* This matter is deemed suitable for decision without oral argument. E.D. Cal. R. 230(g).

1

and Notice of Appeal" in which he requested a stay of the same orders, purportedly proceeding *in propria persona* while he was simultaneously represented by counsel. (ECF No. 778.) In light of Kaczynski's request for new appointed counsel, the court ordered Kaczynski's counsel to provide information concerning his request for another appointed lawyer, and did not immediately authorize Kaczynski to engage in hybrid representation.[1] (ECF No. 782.) However, on November 8, 2010, Kaczynski's counsel filed a "Withdrawal of Defendant's Motion for New Counsel," stating "Kaczynski authorized counsel to withdraw his motion for substitution of counsel[,]" thus mooting the hybrid representation issue. (ECF No. 784.)

A Minute Order issued requesting responses to Kaczynski's November 8, 2010 stay motion. (ECF No. 786.) The United States filed an opposition to Kaczynski's motion on November 12, 2010. (Opp'n to Def.'s Mot. to Stay, ("Gov. Opp'n"), ECF No. 788.) The Named Victims filed an opposition on November 15, 2010, in which they join the government's opposition and incorporate by reference the arguments they made in the "Named Victims' Response to [Kaczynski's] Motion to Modify August 4, 2010 Order." (Named Victims' Opp'n to Def.'s Mot. to Stay, ECF No. 790.)

Kaczynski's pending stay motion concerns orders issued after the Ninth Circuit's decision in U.S. v. Kaczynski, 551 F.3d 1120, 1128 (9th Cir. 2009) ("Kaczynski"), in which it affirmed the district court's approval of the government's plan ("Plan") for selling or disposing of Kaczynski's property seized during the investigation of his bombings.

---

[1] A litigant "does not have an absolute right to both self-representation and the assistance of counsel. Whether to allow hybrid representation remains within the sound discretion of the trial judge." United States v. Halbert, 640 F.2d 1000, 1009 (9th Cir. 1981) (citations omitted).

2

1  Following the Kaczynski decision, a status conference was scheduled for
2  the purpose of ascertaining the status of progress made under the Plan.
3  The government, however, filed a status report in which it sought
4  clarification of parts of the Plan. (ECF No. 758.) Clarification was
5  eventually provided in an order issued on August 5, 2010, which
6  supplemented the August 10, 2006 Order affirmed in Kaczynski. (ECF No.
7  771.)
8         On August 19, 2010, Kaczynski filed a motion to modify the
9  August 5, 2010 Order, in which he included two alternative proposals
10 "[p]roviding [him] a means of obtaining corrections" to his copy of his
11 unredacted writings. (ECF No. 772, at 2:14-15.) Under his first
12 proposal, Kaczynski requested the August 5, 2010 Order be modified to
13 require the government to provide his counsel with a copy of his
14 writings prior to any redactions, and to provide his counsel with ninety
15 days after receipt of the copy within which to request new copies of any
16 illegible or corrupted documents. Id. at 3:12-16. Kaczynski's second
17 proposal requested the August 5, 2010 Order be modified to provide his
18 counsel with one year after receipt of a copy within which to request
19 new copies of any illegible or corrupted documents. Id. at 4:7-10. The
20 second proposal would require "the government to keep its own copy of
21 the original documents, prior to redaction, so that such applications
22 [could] be fulfilled." Id. at 3:23-25.
23         The Court adopted Kaczynski's second proposal in an order
24 filed September 17, 2010, but prescribed that he will receive a physical
25 instead of an electronic copy since the Named Victims' opine that giving
26 Kaczynski an electronic copy would "allow Kaczynski, in a manner of
27 minutes, to upload to the Internet a complete and unredacted set of his
28

writings," likely "reduc[ing] the auction value of the redacted originals." (ECF No. 775, 3:22-4:6; ECF No. 777.)

Kaczynski's motion to modify also requested that the August 5, 2010 Order be modified to include a "provision" for the disposal of papers seized from his cabin that are "the writings of others, e.g. letters from others to [him]." (ECF No. 772, 2:1-4.) Kaczynski argued "these documents are fairly characterized as essential to the communication of ideas in [Kaczysnki's] own writings because many of them are responses to [his] writings or related in some other manner to his writings and are thus logically disposed of in the same manner as [Kaczynski's] own writings." Id. at 5:6-5:9. The government objected to this modification request arguing:

> Since January 26, 2003, when Kaczynski filed a motion that the personal property seized from his cabin, including his writings, be sold or returned to him, Kaczynski has alleged that he has a First Amendment right to disseminate his ideas embodied *in his writings* – but until now he has never alleged that his First Amendment rights are somehow violated if he is not given copies of anyone else's writings.

(ECF No. 773, 2:11-15.) The district court construed this objection as essentially raising a laches defense. (ECF No. 777, 8:2-5.)

## I. DISCUSSION

Kaczynski's stay motion is premised upon two issues, which were raised in his motion to modify the August 5, 2010 Order: 1) whether "he should be afforded an opportunity to examine the copy of his documents provided by the government and make application for corrections prior to the sale of the documents;" and 2) if "the copy provided by the government should include all papers and documents seized from his cabin, not just documents written by himself." (Mot. 4:8-12.)

**A)  Timing of Kaczynski's Receipt of the Copy of His Writings**

Kaczynski argues "it is probable that the Ninth Circuit will agree that [he] is entitled to review the copy provided by the government prior to the sale of his documents," citing two portions of Kaczynski in support of his argument. (Mot. 6:11-25.) The portions of Kaczynski upon which Kaczynski relies, however, do not dictate when the government must provide Kaczynski with copies of his writings. In discussing the government's obligation to provide Kaczynski with a copy of his writings in Kaczynski, the Ninth Circuit stated:

> [I]t is important to note that most of [Kaczynski's] as-applied challenges stem from an inaccurate premise-that he does not have and cannot obtain a complete set of copies of the underlying materials that will be sold. This arises from Kaczynski's interpretation of the district court's order, which he views as requiring him to specifically identify the pages of which he has not yet received copies (a task he claims is impossible because he cannot remember everything he has written). The district court's order, however, simply places an affirmative obligation on the government to provide a full set of legible copies to Kaczynski or his representative . . . We are confident that the district court can and will ensure compliance with this order **prior to any sale** of Kaczynski's documents.

Kaczynski, at 1127 (emphasis added). The words "prior to any sale" in the above quotation concern the timing of the district court's obligation to develop a procedure to ensure Kaczynski receives a "full set of legible copies" of his original writings, not when Kaczynski would receive his copies. Similarly, the Ninth Circuit's language "the district court could permit Kaczynski's designee to compare the photocopied documents to the originals prior to any redactions and before the sale" was an example of what could be considered in equity. Id. at 1127 n.8.

The timing of Kaczynski's receipt of his copy was proposed by the Named Victims in their "Proposed Order Concerning Redaction and Copying of Kaczynski's Writings," "whose interests [the Ninth Circuit] directed the district court to consider." Id., at 1128 (citing U.S. v. Kaczynski, 416 F.3d 971, 977 (9th Cir. 2005).)

The Named Victims have argued "[i]t is . . . possible that the availability of these unredacted materials . . . will sharply reduce the auction value of the redacted originals . . . ." (ECF No. 775, 4:3-6.) Although the Named Victims made this argument in support of their position that Kaczyski should receive a hard instead of an electronic copy of his original writings, it applies equally to the timing of Kaczynski's receipt of his copy. If Kaczynski receives his copy prior to the sale, the copies could be made public, thus having the potential to decrease the auction value of the originals. Id. at 4:3-4.

Delaying Kaczyski's receipt of his copy until after the conclusion of the auction is consistent with the Plan's principal purpose, which is "to maximize monetary return to the [Named Victims]." U.S. v. Kaczynski, 416 F.3d at 977. Therefore, Kaczynski has not shown a likelihood of success on the merits of his arguments that he is entitled to receive a copy of his original, unredacted writings prior to the sale.[2]

---

[2] The parties dispute which legal standard applies to Kaczynski's stay motion. However, this dispute is not decided since Kaczynski fails to prevail on his stay motion under the standard he argues applies. See Mount Graham Coalition v. Thomas, 89 F.3d 554, 558 (9th Cir. 1996) (holding court need not address the balance of the equities or comparison of hardships when no serious legal argument raised on the merits).

6

**B)  Kaczynski's Entitlement to a Copy of Documents Written by Others**

Kaczynski argues he "can demonstrate a high probability of success on the merits" that he is entitled to a copy of his papers "that are not his own writings but the writings of others" because the issue is ripe for review and his request is not barred by laches. (Appl. 7:5-12.) The government rejoins:

> [E]ven if [Kaczynski] did [previously claim a First Amendment right to obtain copies of all of his papers, including the writings of others], the Ninth Circuit held otherwise. [Kaczynski] forecloses that argument. . . . It is clear that the Ninth Circuit ordered that Kaczynski receive complete copies of those documents he authored. It did not order that he be given copies of any other person's writings found in the property seized from his cabin, which property the Ninth Circuit ordered sold.
>
> . . . .
>
> As the documents attached to his application show, Kaczynski has always known that the property seized from his cabin contained not only his journals, diaries and experiments but the writings of others and books and newspaper articles. He argued that the First Amendment protected him from the sale of any of his expressive material and lost.
>
> As to whether he gets copies of documents other than those he authored, the Ninth Circuit has already disposed of that argument adversely to Kaczynski. The sale of his property, including his writings and those of others, has been affirmed without an order that he be given copies of the writings of others.

Id. at 7:24-27, 8:3-5, 8:17-24.)

Although Kaczynski did not raise the issue of his entitlement to the writings of others at the status conference held on June 14, 2010, and specifically stated at that status conference that his request for a copy of his writings concerned only "[h]is personal writings[, n]ot anything besides his journals or his handwritten -- his

7

writings[,]" he did clearly raise the issue in the district court more than six years earlier in "Objections to the Magistrate Judge's Findings and Recommendations" filed on January 29, 2004. (Tr. June 14, 2010 Status Conference ("Tr.") 58:1-6; ECF No. 785-4.) In that filing Kaczynski stated "in the event that the government chooses to sell [Kaczynski's] journals, papers, and photos at an auction, the Court should order that a complete copy be returned to [him] for retention at the University of Michigan's Special Collections library. This would best uphold the important First Amendment interests at stake." (ECF No. 785-4, 2:2:7.) Therefore, if Kaczynski raised this argument on appeal it is foreclosed by Kaczynski; and if Kaczynski did not raise this issue on appeal, it is barred by the latches doctrine. Therefore, Kaczynski has not shown a likelihood of success on the merits of his claim that he is entitled to a copy of the writings of others seized from his cabin.

## II. CONCLUSION

For the stated reasons, both Kaczynski's motion for a stay pending appeal, or in the alternative, motion for a stay until November 18, 2010, are DENIED.

Dated: November 16, 2010

GARLAND E. BURRELL, JR.
United States District Judge