IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THEODORE JOHN KACZYNSKI, ) <br> ) <br> Defendant. ) | 2:96-cr-00259-GEB <br><br> ORDER DENYING MOTION FOR <br> RETENTION OF EVIDENCE |

Defendant Theodore John Kaczynski ("Kaczynski") filed a "Motion for Retention of Evidence" on May 9, 2011, seeking a court order that prevents the United States (the "government") "from disposing of . . . some of the evidence seized from [his] cabin in 1996, and related information[.]" (Def.'s Mot. for Retention of Evid. ("Mot.") 5:1-7.) Specifically, Kaczynski seeks to enjoin disposal of the following evidence for the stated reasons:

> (1) . . . lists and records of evidence . . . because these lists and records will show whether any known cyanide compounds were found in [his] cabin[;]
>
> (2) . . . records of all chemical analyses performed on substances found in [his] cabin, because such records will reveal whether any of the analyses detected cyanide compounds[;]
>
> (3) . . . all powders, liquids, granulated materials, mixtures, and other materials of a possibly chemical nature that were found in [his] cabin, so that these can be chemically analyzed or

1

        re-analyzed, as may in future turn out to be appropriate, to determine whether they contain any cyanide compounds[;]

        (4) . . . the originals of . . . [a]ll materials written in code (together with the keys to the codes), because the majority of the coded materials were devoted to descriptions of [his] illegal acts[, and t]hese materials will show whether [he] ever committed any illegal acts involving cyanide[;] . . . [a]ll letters received or sent by [him] that may date from 1982 or later, because they may provide evidence as to [his] whereabouts and activities during 1982[; and] . . . [a]ll parts of [his] journals that may date from 1982 or later, because they may provide evidence as to [his] whereabouts and activities during 1982.

(Def.'s Mot. for Retention of Evid. ("Mot.") 5:1-6:26.) Kacznyski requests in the alternative that the government be required "to retain photocopies of all the written materials" he requests; "to provide [his] designee, Julie Herrada, with photocopies of all of the [requested] written materials[;]" and "to retain a record of the names and addresses of all purchasers of [the requested] written materials[.]" Id. at 7:1-23.

        Kaczynski argues the referenced evidence "may turn out to be important" should he have "to resolve correctly the question of any putative connection between [him] and [a 1982 event in which someone put potassium cyanide in Tylenol]." Id. at 4:14-25. Kaczynski states the injunction sought is "motivated by" a recent visit from two prison officers, "who told [him] that the Chicago office of the FBI wanted a sample of [his] DNA to compare with some partial DNA profiles connected with [the cyanide incident]." Id. at 3:6-20. Kaczynski filed "this same Motion [in] both the District Court and [in] the 9th Cir.[,]" stating "[i]t's not clear . . . who has jurisdiction over this Motion . . . [b]ut someone ought to have jurisdiction[.]" Id. at 2:16-3:3.

Kaczynski further argues this motion is "URGENT" because the "sale of [his] property begins on [May 18, 2011.]" Id. at 1:18, 2:6-10. The on-line auction of the subject property began on May 18, 2011, however, the bidding for the property is not scheduled to end until June 2, 2011.[1]

The government opposes Kaczynski's motion, arguing "no court has jurisdiction" to grant the relief he requests because "(1) no statute authorizes such an order; (2) it would deeply offend separation of powers for a court to order preservation of evidence for a prosecution not initiated by the Executive Branch; and (3) the case-or-controversy requirement of Article III does not allow courts to entertain [this] theoretical dispute[] which might arise in the future[,]" when "Kaczynski has not been indicted in connection with the Chicago Tylenol investigation, and no such federal prosecution is currently planned." (Pl.'s Mem. in Opp'n ("Opp'n"), 1:23-2:1, 2:9-10.)

"Article III limits the jurisdiction of federal courts to 'cases' and 'controversies.'" San Diego Cnty. Gun Rights Commm. v. Reno, 98 F.3d 1121, 1126 (9th Cir. 1996)(citation omitted). "Federal courts are presumed to lack jurisdiction, unless the contrary appears affirmatively from the record." Id. (internal quotation marks and citation omitted). "Two components of the Article III case or controversy requirement are [the closely related concepts of] standing and ripeness." Bova v. City of Medford, 564 F.3d 1093, 1095-96 (2009).

---

[1] The start and scheduled end date of the auction are judicially noticed under Federal Rule of Evidence 201. See U.S. Marshals Serv., News Release - U.S. Marshals to Auction Unabomber's Personal Effects (May 12, 2011), available at http://www.usmarshals.gov/news/chron/2011/051211.htm; see also GSA Auctions, http://gsaauctions.gov/gsaauctions/aucindx/ (visited May 20, 2011).

"As the part[y] invoking federal jurisdiction, [Kaczynski] bear[s] the burden of establishing standing to [seek the injunctive relief he requests]." San Diego Cnty., 98 F.3d at 1126 (citing Lujan, 504 U.S. at 561). "To do so, [he] must demonstrate three elements which constitute the 'irreducible constitutional minimum' of Article III standing." Id. (quoting Lujan, 504 U.S. at 560).

> First, [he] must have suffered an "injury-in-fact" to a legally protected interest that is both "concrete and particularized" and "actual or imminent," as opposed to "'conjectural' or 'hypothetical.'" Second, there must be a causal connection between [his] injury and the conduct complained of. Third, it must be "likely" - not merely "speculative" - that [his] injury will be "redressed by a favorable decision."

Id. (quoting Lujan, at 560-61.) Further, because Kacznyski seeks injunctive relief, there is an additional "requirement that [he] show a very significant possibility of future harm[.]" Id. (citation omitted).

In comparison, "[f]or a suit to be ripe within the meaning of Article III, it must present concrete legal issues, presented in actual cases, not abstractions." Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1123 (9th Cir. 2009). In other words, "[w]hile standing is primarily concerned with who is a proper party to litigate a particular matter, ripeness addresses when litigation may occur." Bova, 564 F.3d at 1096.

In many cases, "the constitutional component of the ripeness inquiry" "coincides squarely with standing's injury in fact prong." Sacks v. Office of Foreign Assets Control, 466 F.3d 764, 773 (9th Cir. 2006).

> For example, a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all. That is so because, if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is

4

>concrete and particularized enough to establish the first element of standing. In this way, ripeness and standing are intertwined.

Id. (emphasis added).

Kacznyski assumes the Court has jurisdiction to order the relief he requests. However, the specter of Kacznyski's indicated possible future injury is his concern that he could be prosecuted in the future for the 1982 Tylenol poisoning offenses, and need some evidence the government now possesses to aid his defense against that hypothesized prosecution. This "alleged injury . . . is contingent upon [an] event[] [that may not occur,]" and has not been shown to be "concrete and particularized enough to survive the standing/ripeness inquiry." Bova, 564 F.3d at 1096-97; see also Texas v. U.S., 523 U.S. 296, 300 (1998)(stating "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal quotation marks and citation omitted)).

Further, assuming arguendo Kacsynski has standing to seek the relief requested and his request is constitutionally ripe for review, he has not shown his entitlement to the injunctive relief he seeks. "It goes without saying that an injunction is an equitable remedy." Weinberg v. Romero-Barcelo, 456 U.S. 305, 311 (1982). "It is the historic purpose of equity to secure complete justice." U.S. v. Martinson, 809 F.2d 1364, 1367 (9th Cir. 1987)(internal quotation marks and citations omitted).

Injunctions are not remedies "which issue[] as of course[;] . . . [they] issue only where [court] intervention . . . is essential in order . . . to protect . . . against injuries otherwise irremediable." Weinberg, 456 U.S. at 311-12 (internal quotation marks and citation omitted). "[T]he basis for injunctive relief in the federal courts has

1  always been irreparable injury and the inadequacy of legal remedies."
2  Id. Further, "traditional equitable principles requiring the balancing
3  of public and private interests control the grant of . . . injunctive
4  relief in the federal courts." Webster v. Doe, 486 U.S. 592, 604-05
5  (1988). Kaczynski has not addressed the elements required to obtain
6  injunctive relief. Nor has he shown that his interests outweigh the
7  government and Named Victims' obvious competing interests in completing
8  the auction as scheduled.
9           For the stated reasons, Kacynski's Motion for Retention of
10 Evidence is DENIED.

Dated:  May 20, 2011

_____
GARLAND E. BURRELL, JR.
United States District Judge