IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 2:96-cr-00259-GEB |
|        Plaintiff, | ) | |
| | ) | |
|     v. | ) | AMENDED ORDER DENYING MOTION |
| | ) | FOR RETENTION OF EVIDENCE |
| THEODORE JOHN KACZYNSKI, | ) | |
| | ) | |
|        Defendant. | ) | |
| _____ | ) | |

Defendant Theodore John Kaczynski ("Kaczynski") filed a "Motion for Retention of Evidence" on May 9, 2011, seeking a court order that prevents the United States (the "government") "from disposing of . . . some of the evidence seized from [his] cabin in 1996, and related information[.]" (Def.'s Mot. for Retention of Evid. ("Mot.") 5:1-7.) Specifically, Kaczynski seeks to enjoin disposal of the following evidence for the stated reasons:

> (1) . . . lists and records of evidence . . . because these lists and records will show whether any known cyanide compounds were found in [his] cabin[;]

> (2) . . . records of all chemical analyses performed on substances found in [his] cabin, because such records will reveal whether any of the analyses detected cyanide compounds[;]

> (3) . . . all powders, liquids, granulated materials, mixtures, and other materials of a possibly chemical nature that were found in [his] cabin, so that these can be chemically analyzed or re-analyzed, as may in future turn out to be

1

1          appropriate, to determine whether they contain any
           cyanide compounds[;]
2
3                    (4) . . . the originals of . . . [a]ll
           materials written in code (together with the keys
4          to the codes), because the majority of the coded
           materials were devoted to descriptions of [his]
5          illegal acts[, and t]hese materials will show
           whether [he] ever committed any illegal acts
6          involving cyanide[;] . . . [a]ll letters received
           or sent by [him] that may date from 1982 or later,
7          because they may provide evidence as to [his]
           whereabouts and activities during 1982[; and] . . .
8          [a]ll parts of [his] journals that may date from
           1982 or later, because they may provide evidence as
9          to [his] whereabouts and activities during 1982.

10  (Mot. 5:8-6:26.) Kacznyski requests in the alternative that the

11  government be required "to retain photocopies of all the written

12  materials" he requests; "to provide [his] designee, Julie Herrada, with

13  photocopies of all of the [requested] written materials[;]" and "to

14  retain a record of the names and addresses of all purchasers of [the

15  requested] written materials[.]" Id. at 7:1-23.

16          Kaczynski argues the referenced evidence "may turn out to be

17  important" should he have "to resolve correctly the question of any

18  putative connection between [him] and [a 1982 event in which someone put

19  potassium cyanide in Tylenol]." Id. at 4:14-25. Kaczynski states the

20  injunction sought is "motivated by" a recent visit from two prison

21  officers, "who told [him] that the Chicago office of the FBI wanted a

22  sample of [his] DNA to compare with some partial DNA profiles connected

23  with [the cyanide incident]." Id. at 3:6-20. Kaczynski filed "this same

24  Motion [in] both the District Court and [in] the 9th Cir.[,]" stating

25  "[i]t's not clear . . . who has jurisdiction over this Motion . . .

26  [b]ut someone ought to have jurisdiction[.]" Id. at 2:16-3:3.

27          Kaczynski further argues this motion is "URGENT" because the

28  "sale of [his] property begins on [May 18, 2011.]" Id. at 1:18, 2:6-10.

1  The on-line auction of the subject property began on May 18, 2011,

2  however, the bidding for the property is not scheduled to end until June

3  2, 2011.[1]

4       The government opposes Kaczynski's motion, arguing "no court

5  has jurisdiction" to grant the relief he requests because "(1) no

6  statute authorizes such an order; (2) it would deeply offend separation

7  of powers for a court to order preservation of evidence for a

8  prosecution not initiated by the Executive Branch; and (3) the case-or-

9  controversy requirement of Article III does not allow courts to

10 entertain [this] theoretical dispute[] which might arise in the

11 future[,]" when "Kaczynski has not been indicted in connection with the

12 Chicago Tylenol investigation, and no such federal prosecution is

13 currently planned." (Pl.'s Mem. in Opp'n ("Opp'n"), 1:23-2:1, 2:9-10.)

14       Article III of the Constitution "restricts federal court[]

15 [jurisdiction] to the resolution of cases and controversies." Davis v.

16 Fed. Election Commm'n, 554 U.S. 724, 732 (2008). "Federal courts are

17 presumed to lack jurisdiction, unless the contrary appears affirmatively

18 from the record." San Diego Cnty. Gun Rights Comm. v. Reno, 98 F.3d

19 1121, 1126 (9th Cir. 1996)(internal quotation marks and citation

20 omitted). "Two components of the Article III case or controversy

21 requirement are [the closely related concepts of] standing and

22 ripeness." Bova v. City of Medford, 564 F.3d 1093, 1095-96 (2009). "To

23 allege a justiciable [request for injunctive relief], [the party

24

25      [1]   The start and scheduled end date of the auction are judicially
26 noticed under Federal Rule of Evidence 201. See U.S. Marshals Serv.,
   News Release – U.S. Marshals to Auction Unabomber's Personal Effects
27 ( M a y   1 2 ,   2 0 1 1 ) ,   a v a i l a b l e   a t
   http://www.usmarshals.gov/news/chron/2011/051211.htm; see also GSA
28 Auctions, http://gsaauctions.gov/gsaauctions/aucindx/ (visited May 20,
   2011).

3

1  requesting relief] must plead facts that are sufficient to confer

2  standing and demonstrate that the [request] is ripe for determination."

3  Dermer v. Miami-Dade Cnty., 599 F.3d 1217, 1220 (11th Cir. 2010).

4          "As the part[y] invoking federal jurisdiction, [Kaczynski]

5  bear[s] the burden of establishing standing to [seek the injunctive

6  relief he requests]." San Diego Cnty., 98 F.3d at 1126 (citing Lujan v.

7  Defenders of Wildlife, 504 U.S. 555, 561 (1992)). "To do so, [he] must

8  demonstrate three elements which constitute the 'irreducible

9  constitutional minimum' of Article III standing." Id. (quoting Lujan,

10 504 U.S. at 560).

11          First, [he] must have suffered an "injury-in-fact"
            to a legally protected interest that is both
12          "concrete and particularized" and "actual or
            imminent," as opposed to "'conjectural' or
13          'hypothetical.'"  Second, there must be a causal
            connection between [his] injury and the conduct
14          complained of. Third, it must be "likely" – not
            merely "speculative" – that [his] injury will be
15          "redressed by a favorable decision."

16 Id. (quoting Lujan, at 560-61). Further, because Kacznyski seeks

17 injunctive relief, there is an additional "requirement that [he] show a

18 very significant possibility of future harm[.]" Id. (citation omitted).

19          In comparison, "[r]ipeness is peculiarly a question of

20 timing." Thomas v. Union Carbide Agr. Prods. Co., 473 U.S. 568, 580

21 (1985). "For a suit to be ripe within the meaning of Article III, it

22 must present concrete legal issues, presented in actual cases, not

23 abstractions." Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112,

24 1123 (9th Cir. 2009). "A claim is not ripe for adjudication if it rests

25 upon contingent future events that may not occur as anticipated, or

26 indeed may not occur at all." Texas v. U.S., 523 U.S. 296, 300

27 (1998)(internal quotation marks and citation omitted).

28

1    In many cases, "the constitutional component of the ripeness

2  inquiry" "coincides squarely with standing's injury in fact prong."

3  Sacks v. Office of Foreign Assets Control, 466 F.3d 764, 773 (9th Cir.

4  2006).

5          For example, a claim is not ripe for
            adjudication if it rests upon contingent future
6           events . . . . That is so because, if the
            contingent events do not occur, the plaintiff
7           likely will not have suffered an injury that is
            concrete and particularized enough to establish the
8           first element of standing. In this way, ripeness
            and standing are intertwined.

9

10  Id.

11    Kacznyski assumes the Court has jurisdiction to remedy what

12  is, in essence, a conjectural concern about the possibility of facing

13  prosecution in the future for the 1982 Tylenol poisoning offenses.

14  However, this "alleged injury . . . is contingent upon [an] event[]

15  [that may not occur,]" and has not been shown to be "concrete and

16  particularized enough to survive the standing/ripeness inquiry." Bova,

17  564 F.3d at 1096-97. Therefore, Kaczynski has not shown that he has

18  standing, or that what prompts him to seek injunctive relief is ripe for

19  judicial decision.

20    Further, assuming arguendo Kaczynski has standing to seek the

21  relief requested, and that his request is constitutionally ripe for

22  review, he has not shown his entitlement to injunctive relief. "It goes

23  without saying that an injunction is an equitable remedy." Weinberg v.

24  Romero-Barcelo, 456 U.S. 305, 311 (1982). "It is the historic purpose of

25  equity to secure complete justice." U.S. v. Martinson, 809 F.2d 1364,

26  1367 (9th Cir. 1987)(internal quotation marks and citations omitted).

27    Injunctions are not remedies "which issue[] as of course[;] .

28  . . [they] issue only where [court] intervention . . . is essential in

1  order . . . to protect . . . against injuries otherwise irremediable."

2  Weinberg, 456 U.S. at 311-12 (internal quotation marks and citation

3  omitted). "[T]he basis for injunctive relief in the federal courts has

4  always been irreparable injury and the inadequacy of legal remedies."

5  Id.  Further, "traditional equitable principles requiring the balancing

6  of public and private interests control the grant of . . . injunctive

7  relief in the federal courts." Webster v. Doe, 486 U.S. 592, 604-05

8  (1988). Kaczynski has not addressed the elements required to obtain

9  injunctive relief. For example, he says nothing about whether his

10  previous criminal defense attorneys or other persons or entities with

11  whom he has associated and/or given evidence have the evidence he

12  desires to obtain. This silence does not support the equitable

13  injunctive remedy Kaczynski seeks. Nor has Kaczynski shown that the

14  personal interests he seeks to satisfy through the requested injunction

15  outweigh the government and Named Victims' competing interests in

16  completing the auction as scheduled.

17        For the stated reasons, Kaczynski's Motion for Retention of

18  Evidence is DENIED.

19  Dated:  May 23, 2011

20

21  _____
    GARLAND E. BURRELL, JR.

22  United States District Judge

23

24

25

26

27

28